SHIRLEY CAMPBELL *vs.* GEORGE M. ROMANOS, JR.,
& another
(and three companion cases[1]).

Suffolk. May 7, 1963. — July 5, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or one having his
rights, Common hallway, Contract of letting, Rubbish. *Negligence,* One
owning or controlling real estate, Fire, Violation of law. *Fire. Proximate Cause. Conscious Suffering.*

Evidence warranted a finding that it was an implied term of the contract
of letting between a tenant of an apartment in an apartment building
and the owner of the building that the owner assumed the duty of removing regularly rubbish which he authorized the tenants of the building to put out in the common hallways. [365–366]
In an action by a tenant of an apartment on an upper floor of an apartment building against the owner of the building for injuries sustained

---

[1] The companion cases are by Benjamin Campbell and another, Stephen
Campbell and another, and Shirley Campbell, administratrix, against the
same defendants.

by the plaintiff when an accumulation of rubbish in the common hall-way near her door "exploded" in flames from an intense fire originating in accumulated rubbish under stairs in the first floor common hallway adjacent to an unused elevator shaft having an open door panel, the evidence warranted findings that the defendant, by permitting the rubbish to accumulate in the common hallways for two weeks before the fire, was negligent in the performance of an undertaking with the plaintiff in the contract of letting to remove the rubbish regularly, and that the owner's negligence was the proximate cause of the plaintiff's injuries, even though the actual cause of the fire was not shown.   [366–367]

Evidence that a child went to the door of her apartment in an apartment building and in the common hallway came in contact with a fire which burned her hair and that she ran away from the flames back into her apartment and later was found dead there warranted a finding that she suffered consciously.   [367]

Upon evidence in an action by a tenant of an apartment in an apartment building against the owner of that building, that injuries sustained by the plaintiff were due to negligence of the defendant in the performance of an undertaking with the plaintiff in the contract of letting to remove rubbish from the common hallways of the building, it was error to charge the jury that one "in control of a building must exercise reasonable care to keep it in such condition that others will not be injured." [367–368]

A violation of municipal regulations establishing minimum standards of fitness of buildings for human habitation was not evidence of negligence of the landlord of an apartment building toward a tenant therein injured by the violation.   [368]

FOUR ACTIONS OF TORT.   Writs in the Superior Court dated December 21, 1959.

The actions were tried before *Wisnioski, J.*

*Morris Michelson* (*Jerrold A. Olanoff* with him) for the defendants.

*Joseph J. Hurley* (*Thomas E. Cargill, Jr.,* with him) for the plaintiffs.

KIRK, J.   These are actions of tort based on negligence for personal injuries to Mrs. Shirley Campbell and to her children, Benjamin and Stephen, and for the conscious suffering and death of her child Patricia in a fire on February 18, 1958, in an apartment building owned by the defendant Romanos at 561 Columbus Avenue, Boston, where Mrs. Campbell was a tenant.   The other defendant, Walker, was the janitor of the building at and before the time of the fire. There were verdicts for the plaintiffs on all counts which

were submitted to the jury. The case comes to us on the defendants' exceptions to the denial of motions for directed verdicts, to rulings on evidence, and to certain instructions given to the jury.

We summarize the evidence in the aspect most favorable to the plaintiffs. *Howes* v. *Kelman,* 326 Mass. 696, 697. Mrs. Campbell became a tenant of Romanos on January 2, 1958. Altogether there were nine apartments in the building. The Campbells occupied the front apartment of the two on the top or fifth floor. The stairs and hallways were neat and clean when they moved in. Mrs. Campbell did not see Romanos when she made her first rental payment at his office. Walker told her when the tenancy began to put her trash in the hall outside her door and he would pick it up. (This statement was limited to the defendant Walker.) Other tenants on other floors of the building put their trash out in the hallways and it was regularly and routinely collected, on a daily basis, by Walker. Romanos testified that the hallways of the building were common passageways and that his instructions to Walker were to take care of the property and keep it clean. He was familiar with Walker's routine in removing rubbish from the hallways. He knew that Walker started at the top of the building with a large folding canvas bag, collected the rubbish, proceeded to the floors below, and finally emptied the trash in barrels outside the building. One Steeves who actively managed this building for Romanos testified that it was Walker's job to remove refuse and garbage regularly. Walker himself described the regularity of his procedure in collecting rubbish in all of the hallways.

There was evidence that commencing two weeks before the fire the rubbish was not collected regularly and that there then began an accumulation of stacked newspapers, rags, shoes, and paint cans at the rear of the first floor hallway underneath the stairs. Romanos told Walker to remove the stuff; but he did not do it and the material was still there at 6 P.M. on the evening of the fire. Adjacent to this accumulated material there was an unused elevator

Campbell v. Romanos.

shaft. One panel of the door to the shaft was covered with a sheet of tin to replace a broken glass pane. The tin occasionally was pulled away from the door, and had to be put back in place. On the day of the fire Walker noticed that the tin was pulled away from the door. About a week before the fire there were greasy cartons and papers and cans stacked in front of the door of the apartment at the rear of the fifth floor.

At 9:15 P.M. on February 18, 1958, Mrs. Campbell while in her apartment heard a commotion and went to the door with Stephen and Patricia. There was intense heat. She tried to go down the stairway, but the trash on the fifth floor "exploded," causing flames to leap up and block the exit. She pushed the children back into the apartment and shut the door. The flames had touched Patricia's hair. The lights went out. All survived except Patricia who was found dead in the apartment by a fireman. In the opinion of the district fire chief the fire had started in the rubbish in the first floor hallway and the accumulation of trash had extended and intensified the fire. When the chief arrived at the scene the fire extended to the fourth floor but had not yet reached the fifth floor. Soon after his arrival there was a "hot air explosion" as the flames broke through to the fifth floor.

We first consider the defendants' motions for directed verdicts. In doing so we do not apply to the case, as argued by the plaintiffs, the general rule "that a person in exclusive control and possession of a building or of a part thereof is required to exercise reasonable care to keep it in such condition that others will not be injured in their persons or property." *Gilroy* v. *Badger,* 301 Mass. 494, 496. This is not the rule which determines the rights of a tenant and the correlative duty owed to him by a landlord with respect to common passageways. *Regan* v. *Nelson,* 345 Mass. 678, 680–681. "With respect to common areas used by tenants over which the landlord retains control, the landlord owes to his tenants 'the duty to use reasonable care to keep the common areas in as good a condition as that in

which they were or appeared to be at the time of the creation of the tenancy.' *Goodman* v. *Smith,* 340 Mass. 336, 338.'' *Crea* v. *Stunzenas,* 344 Mass. 265, 267, and cases cited. *Marion* v. *Bryson,* 326 Mass. 618, 619. The duty is concerned with the condition of the premises themselves with relation to their condition when the tenancy began. ''There is at common law, in the absence of special agreement, no duty on the part of a landlord to see that articles not part of the building are not left on common stairways by persons other than himself or his agents or employees.'' *Richmond* v. *Warren Inst. for Sav.* 307 Mass. 483, 486, and cases cited. *Bacon* v. *Jaques,* 312 Mass. 371, 373. *Hebb* v. *Gould,* 314 Mass. 10, 14–15. *Vaillancourt* v. *Rex Realty Corp.* 326 Mass. 534, 535–536.

We are called upon to determine, in the light of the foregoing principles, if there is '' '. . . anywhere in the entire evidence any set of circumstances that will support a reasonable inference in favor of the plaintiff.' *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719.'' *Donnelly* v. *Larkin,* 327 Mass. 287, 289, and cases cited. We think that the evidence presents a question of fact as to whether Romanos had assumed a duty by the terms of the letting to remove rubbish from the stairs and hallways, which he negligently performed, and was therefore liable to a tenant, or one who has the same rights as a tenant, *Carey* v. *Malley,* 327 Mass. 189, 194, who suffered injury as a result. *Miller* v. *Berk,* 328 Mass. 393, 396, and cases cited. On the question as to the existence of an agreement to remove the rubbish as part of the terms of the letting, the case falls within the group represented by *Gallagher* v. *Murphy,* 221 Mass. 363 (maintenance of light), *Erickson* v. *Buckley,* 230 Mass. 467 (removal of snow and ice), *Carey* v. *Malley,* 327 Mass. 189 (removal of snow and ice), *Donnelly* v. *Larkin,* 327 Mass. 287 (maintenance of light), and *Sullivan* v. *Hamacher,* 339 Mass. 190. It does not in our judgment come within the group of distinguishable cases collected in *Hebb* v. *Gould,* 314 Mass. 10, 15. The test in these circumstances as stated originally in *Gallagher* v. *Murphy,* 221 Mass. 363, 365, and

as repeated and applied more recently in *Donnelly* v. *Larkin*, 327 Mass. 287, 290, reads, ''The contract of letting does not appear to have been in writing. There was no direct and positive evidence as to its terms. Therefore the conduct of the landlord and of the tenant, to the extent that it was so open and notorious as to speak the understanding of the parties and as to be likely to have come to the attention of the other and to be of such character as to call for some action on his part if he did not assent to the implications fairly arising from it, may be resorted to for the purpose of determining what were the terms of the tenancy according to the intentions and contemplation of the parties.'' Evidence that Romanos had never met Mrs. Campbell and had never discussed with her the terms of the tenancy or had never expressly agreed with her as to what services he would furnish is not conclusive against the plaintiffs. See *Miller* v. *Berk*, 328 Mass. 393, 395–396. It would seem to be inferable from Romanos's own testimony that he knew ''what janitor's services went with the apartment and were included in the rental.'' *Miller* v. *Berk,* at 396. It could be found, apart from Walker's testimony, that Romanos and the manager had authorized the placing of the rubbish by the tenants in the hallway, and had assumed, as one of the terms under which the tenants, including the Campbells, occupied the property, the duty of regularly removing it from the hallways.

On the issue of negligence it could be found that Romanos actually knew, and that Steeves, the property manager, knew or ought to have known of the dangerous accumulation of debris in time to have taken measures to eliminate the danger. *Correira* v. *Atlantic Amusement Co. Inc.* 302 Mass. 81, 83, and cases cited.

In our opinion the jury could find that the defendants had permitted the rubbish to accumulate for an unreasonable period of time, and that the presence of paint cans, papers, rags, and other items on the first floor near an unused elevator shaft with an opening in the door created a condition which foreseeably was fraught with the risk of fire which

once started would extend rapidly, as in fact it did. The physical facts, coupled with the testimony of the fire chief, made a question for the jury on the issue of causation. Although the actual cause of the fire was not proved, its intensity and speedy extension to the top floor of the building could be held attributable to the negligence of the defendants. *Geraci* v. *A. G. Tomasello & Sons, Inc.* 293 Mass. 552, 554–555. See *Kelley* v. *First Natl. Bank,* 281 Mass. 169. There was, therefore, no error in the denial of the motions for directed verdicts.

The evidence was sufficient to warrant a finding of conscious suffering by Patricia. It appears that she was in contact with the fire, that her hair was burned, and that she ran away from the flames and later was found dead. "A very brief period of life between injury and death will enable the cause of action to accrue and therefore to survive, and will give time for conscious suffering for which damages may be assessed." *Royal Indem. Co.* v. *Pittsfield Elec. Co.* 293 Mass. 4, 8, and cases collected.

There was error, however, in certain instructions which the judge gave to the jury and to which exceptions were saved. The instructions given were based upon an erroneous conception of the applicable law. The judge gave an instruction, requested by the plaintiffs, that "[a] person in control of a building must exercise reasonable care to keep it in such condition that others will not be injured." As pointed out earlier in this opinion this is not the rule to be applied to injuries arising from conditions in common passageways where the relationship of landlord and tenant defines the rights and duties between the person in control and the person injured. *Chalfen* v. *Kraft,* 324 Mass. 1, relied upon by the plaintiffs, dealt not with a hazard existing in a common passageway, but rather with a fire which had its origin in rubbish in the cellar near a boiler where it could be found the landlord had exclusive control. Similarly *Ross* v. *Broitman,* 338 Mass. 770, also relied upon by the plaintiffs, dealt with a fire which started in one building and spread to a nearby building and there caused a

death.   Neither of these cases applies to the situation presented by the case at bar.

There was also error in granting the plaintiffs' request which stated that "A violation of the 'Regulations Establishing Minimum Standards of Fitness for Human Habitation in the City of Boston' is evidence of negligence as to all consequences that were intended to be prevented."   As was pointed out in *Richmond* v. *Warren Inst. for Sav.* 307 Mass. 483, 485, statutes of this nature do not create new civil causes of action or "impose a civil liability or . . . affect the mutual relations and duties of landlords and tenants as between each other," and a violation of them has no effect as evidence of negligence.   *Greenway Wood Heel Co. Inc.* v. *John Shea Co.* 313 Mass. 177, 183.   The same reasoning of course governs municipal regulations.

Since the instructions given cannot be considered harmless, there must be a new trial.   Other exceptions of the defendants need not be considered.

*Exceptions sustained.* ·