610

MRS. RUBY LEE NEWMAN, Plaintiff-Appellant, v.
JOHN H. SIMMONS, Middle Tennessee Foods, Inc.,
and G. & W. Food Products of Ohio,
Defendants-Appellants.—466 S.W.2d 506.

Middle Section. September 10, 1970.

Certiorari Denied by Supreme Court March 1, 1971.

612

Glasgow, Adams & Taylor, Nashville, for plaintiff-appellant.

Parker, Nichols & Roberts, Nashville, for defendants-appellants.

PURYEAR, J. For convenience in writing this opinion we will refer to the parties as plaintiff and defendants, as they were designated in the trial Court. The suit arose out of a highway accident in which the plaintiff's husband, Henry C. Newman, was killed and plaintiff brings this suit for her own use and benefit as surviving widow of the said Henry C. Newman.

The decedent, who was a 73 year old semi-retired farmer, was operating a farm tractor, pulling a farm wagon loaded with lumber, when the wagon was struck from the rear by a truck being driven by the defendant, John H. Simmons, as agent of Middle Tennessee Foods, Inc., and G. & W. Food Products of Ohio. Another de-

fendant, Midwest Pizza Company, was also sued but a verdict was directed in favor of that particular defendant and judgment rendered on that verdict has become final and therefore, Midwest Pizza Company is not involved in this appeal.

The case was tried before the Circuit Judge and a jury and at the conclusion of all of the evidence, the trial Court directed a verdict in favor of plaintiff against the defendants, John H. Simmons and Middle Tennessee Foods, Inc., for compensatory damages; directed a verdict in favor of the defendant Midwest Pizza Company, on the question of liability, submitted the case to the jury on the issue of punitive damages, directed the jury to determine the amount of compensatory damages to be awarded, and also the amount of punitive damages, if any punitive damages should be awarded.

After argument of counsel and charge of the Court, the jury returned a verdict in favor of plaintiff and against the defendants, John H. Simmons, Middle Tennessee Foods, Inc., and G. & W. Food Products of Ohio, fixed plaintiff's compensatory damages at $65,000.00, but awarded no punitive damages.

A motion for new trial was filed by the three defendants, who are the appellants here, upon consideration of which motion the trial Judge suggested a remittitur of $15,000.00, which was accepted under protest by plaintiff, and the motion for a new trial was overruled.

From the trial Court's judgment overruling their motion for a new trial, the defendants, John H. Simmons, Middle Tennessee Foods, Inc., and G. & W. Food Products of Ohio, have appealed and filed six assignments of error.

The plaintiff, Mrs. Newman, has also appealed from the trial Court's action in suggesting a remittitur of $15,000.00, which she accepted under protest, and has perfected an appeal with a single assignment of error in which she assails the action of the trial Court in suggesting such remittitur.

We will not discuss the assignments in the order in which they have been arranged by counsel. In their sixth assignment the defendants, John H. Simmons and Middle Tennessee Foods, Inc., insist it was error for the trial Court to direct a verdict against them on the issue of liability for compensatory damages.

In considering this assignment we are, of course, bound by the rule that where there is a dispute as to any material evidence or any legal doubt as to the conclusions to be drawn from the whole evidence, on the issues to be tried, there can be no constitutional exercise of power to direct a verdict. Nelson v. Rural Educational Association (1939), 23 Tenn.App. 409, 134 S.W.2d 181; General Motors Corp. v. Dodson (1960), 47 Tenn.App. 438, 338 S.W.2d 655; Poole v. Bank (1940), 29 Tenn.App. 327, 196 S.W.2d 563 and many other cases.

At the time the accident occurred, the decedent was operating a farm tractor on U. S. Highway 41A, proceeding in a southerly direction toward Nashville and he was pulling a farm wagon loaded with lumber. The defendant, John H. Simmons, was driving an International ton and a half or two ton refrigerated truck also proceeding in a southerly direction toward Nashville on U. S. Highway 41A.

There were only two eye witnesses to the accident, one of whom was the defendant, Simmons, and the other

was a Mrs. Frances Jackson. Simmons testified as follows.

"Q. As you approached the scene where this accident happened, can you describe the type of roadway it was?

A. Well, I was coming up a slight grade around a slight curve and after you bypass the curve, it is a fairly straight shot. As far as distance of the straight shot, I really don't know.

Q. This was a segment of highway where there are two lanes, one for traffic in each direction, I take it?

A. That is right.

Q. Was there any traffic ahead of you?

A. Yes, sir.

Q. What was the traffic? Was it heavy?

A. If I am not mistaken, there were two or three cars. I know there were two.

Q. I hand you two color photos, and ask you if you will look at those, please, sir. Now as I understand it, you were going in a southerly direction toward Nashville, is that right?

A. That is right.

Q. Do those two pictures fairly represent the curve that you negotiated before you arrived at the scene of the accident?

A. Yes, it does.

\* \* \* \* \* \*

"Q. About what speed were you going at that time?

A. Between 45 and 50 miles an hour.

Q. Were you going faster or slower than other traffic, or about the same?

A. About like the other traffic.

Q. As you were going around that curve approaching the area where the accident took place, would you describe the markings on the road itself?

A. Well, there's a yellow line going down through there.

Q. Mr. Simmons, tell us in your own words what happened as you approached the accident scene?

A. As I approached the accident scene, as I said, I was going approximately 45 or 50 miles an hour and I was behind two or three cars. I saw the car in front of me all at once swerve. Well, when this car swerved—then, out there was the tractor and trailer, wagon, whichever one you want to call it. With no more time than I had, I tried to apply my brakes and make the turn at the same time and, when I did, I do not know for sure whether he was hauling lumber or not, but it looked like to me it was. I hit the left rear wheel, of the wagon with the right front of the truck." (B. of E. Vol. IV, pp. 502, 503, 504.)

Mrs. Jackson described the accident as follows:

"Q. And were you going the same direction the truck was?

A. Yes, sir.

Q. Did you follow on along behind the truck?

A. Yes, sir.

Q. Now tell us what happened?

A. Well, all at once something flew up in front of the truck. Lumber it flew high enough I could see it over the truck.

Q. Over the truck?

A. Yes.

Q. Was that the lumber over the bed of that trailer?

A. Yes, sir.

Q. Did you see the truck swerve or skid or the back lights come on that truck before you saw that lumber flying up above the truck?

A. No, sir.

Q. Did you see whether the driver made any effort to slow down, stop—

MR. PARKER: We object to the leading question.

THE COURT: Objection? What do you—

BY MR. ADAMS:

Q. Did you notice any motion or action taken by the truck to indicate the driver had made any effort to avoid colliding with the trailer?

A. No, sir, the truck swerved when this lumber flew up.

Q. Did it swerve before or after the lumber flew up?

A. After the lumber flew up.

Q. Did the brake lights come on on that truck before it hit the rear of the trailer?

A. No, sir. (B. of E. Vol. I, pp. 117, 118.)

The accident occurred in broad daylight and there is no evidence of fog, rain or anything else to obscure visibility and there is no evidence that the decedent suddenly drove this tractor into the path of defendant's truck and therefore no evidence of proximate contributory negligence on the part of decedent. The issue of remote contributory negligence, to be considered in mitigation of damages if any such negligence be found, was submitted to the jury and apparently resolved in favor of plaintiff.

Plaintiff introduced some evidence to support her insistence that Simmons was driving the truck while under the influence of an intoxicant, but this is denied by him. However, the above quoted testimony of Simmons and Mrs. Jackson, standing alone, was sufficient to justify a directed verdict in favor of plaintiff and against the defendants, Simmons and Middle Tennessee Foods, Inc., without regard to evidence of his drinking habits.

Under the uncontroverted evidence in this case, all reasonable persons would reach the conclusion that Simmons was guilty of negligence in at least one of the following particulars:

(1) He was not keeping a proper lookout ahead or (2) he did not have his vehicle under control or (3) he was following too closely behind the vehicle immediately ahead of him under prevailing traffic conditions, and his negligence was the proximate cause of the accident.

The law in Tennessee is well settled that the trial Judge has the right in jury cases to sustain a motion for peremptory instructions and take the case away from the

jury when there is no controversy as to any material fact that would be determinative of the case. Ward v. Southern Railway Co. (1932) 15 Tenn.App. 380; Tenn. Electric Power Co. v. Van Dodson (1931), 14 Tenn.App. 54; Stafford v. Consolidated Bus Lines (1942), 179 Tenn. 185, 164 S.W.2d 15.

The right of a trial Court to direct a verdict for the plaintiff is also well established. Supreme Liberty Ins. Co. v. Pemelton (1940), 24 Tenn.App. 576, 148 S.W.2d 1. In Pemelton, supra, this Court said:

"The power of the trial judge to direct a verdict in favor of plaintiff is well recognized. See Tennessee Copper Co. v. Simpson, 6 Tenn.Civ.App. (6 Higgins), 536; King v. Cox, 126 Tenn. 553, 151 S.W., 58." Supra, p. 579, 148 S.W.2d p. 3.

As to liability of the defendant, G. & W. Food Company of Ohio, on the issue of compensatory damages, the only issue of fact upon which the jury could have differed was one of agency. There is evidence in the record that at the time of accident the vehicle being driven by Simmons was registered in the name of G. & W. Food Products of Ohio, and there is not sufficient and satisfactory evidence in the record to rebut the presumption created by such registration. Under proper instructions from the trial Judge, this issue was resolved by the jury in favor of plaintiff and there is no assignment by G. & W. Food Products Company to the effect that there is no evidence to support this finding by the jury. Consequently, this issue has been foreclosed by the jury's verdict.

For the foregoing reasons we respectfully overrule the defendants' sixth assignment of error.

Under their fourth assignment the defendants insist that the trial Court erred in refusing to grant any of their motions for a mistrial because of the introduction of prejudicial testimony of Jimmy Nelson, Frank Bernard Evers, Jr. and William Cameron, and because of the unavoidable absence of another witness, Harlan Bracey, who failed to appear in Court and testify in response to a subpoena which had been timely served.

Nelson's testimony concerned the drinking habits of Simmons, and the trial Judge finally instructed the jury not to consider this testimony because there was no evidence that any of the other defendants had knowledge of such drinking habits. Therefore, it must be presumed that this evidence did not affect the result of the trial.

The testimony of Evers was heard by the trial Judge outside the presence of the jury and therefore could not have affected the result of the trial.

Defendants insist that the testimony of William Cameron was prejudicial because he identified himself as an insurance adjuster and was introduced for the purpose of identifying some photographs and measurements which he made at the scene of accident. The bill of exceptions does not show that this witness was identified as an insurance adjuster and therefore his testimony could not have been prejudicial for this reason.

Harlan Bracey, who was under subpoena but was not available as a witness when called to testify at the trial, later testified before the trial Judge when the motion for new trial was being considered.

This witness said he would have testified to certain facts which would have been a legitimate explanation for

the odor of alcoholic beverage on Simmons shortly after the accident, but in view of what we have already said in overruling the sixth assignment, this evidence could not have affected the result of the trial.

Bracy said he would have also testified that he knew the decedent, Mr. Newman, and that he was old and feeble. However, in view of the disposition which we are making of this case the defendants will have another opportunity to offer the relevant portion of Mr. Bracey's testimony.

■ Moreover, the granting of a mistrial or continuance because of the absence of a witness or other circumstance is a matter which rests within the sound discretion of the trial Judge and no abuse of discretion appears here. Morrow v. Drumwright (1957), 202 Tenn. 307, 304 S.W.2d 313; Higgins v. Steide (1959), 47 Tenn. App. 42, 335 S.W.2d 533; Jones v. State (1966), 218 Tenn. 378, 403 S.W.2d 750; Layman v. State (1968), Tenn.Cr.App., 429 S.W.2d 832.

Therefore, the defendants' fourth assignment is respectfully overruled.

Under their first assignment, the defendants insist that, during course of argument to the jury by plaintiff's counsel, certain prejudicial remarks were made by the trial Judge.

Such remarks are alleged to have occurred as follows:

"MR. ADAMS:

And look at what they have done. He says to you that Exhibit No. 10, which leaves out this officer here—and I don't understand the significance of that—is differ-

ent from Exhibit 36, which he says is so important. But look what he has done in Exhibit 36—Mr. Parker, who gets up here so sanctimoniously and represents to you that Exhibit 36 is the whole thing. Why, that is not near the whole thing. Look at what they have cropped there. That is a terrific cropping right there; terrifically cropped. Look-a-here, here it is right here. They do it all the time. And he had done it to convince you—

MR. PARKER: Your Honor, I didn't do any cropping. I just bought the official police photographs. I except to that.

THE COURT: The evidence is quite equal on that point that each bought the official photographs. And the evidence is also apparent that some of the pictures purchased by Mr. Parker were intentionally cropped. For instance, the one that shows the officer. That was taken out of the photograph.

BY MR. ADAMS:

Here's the cropping right here, Exhibit No. 34. The other exhibit, 36, that I showed you, that is cropping.'' (B. of E. Vol. V, pp. 701; 702)

In their context, the foregoing remarks of the trial Judge do not appear to be intended as a comment upon the evidence, but rather as observations to exonerate counsel of any implication of misconduct. The results of such remarks, if any, will be rendered harmless by the disposition to be made of this appeal.

The first assignment of error filed by the defendants is respectfully overruled.

In their second assignment of error the defendants insist that the trial Court erred in charging the jury,

over their objection, that it could award damages for the conscious pain and suffering and loss of time of the decedent, Henry C. Newman.

The trial Judge's complete instruction on this element of damage is as follows:

"The plaintiff sues as administratrix and as the beneficiary of this cause of action within the meaning of that statute. She sues upon two items of damage. The first, as specified by the statute, is to recover damages for the death of the decedent. Rather, the first is for damages that accrued prior to the decedent's death and, in this regard, such damages would be for the conscious pain and suffering sustained by the decedent prior to his death and after the accident. The burden of proof of the existence of such damages is upon the plaintiff.

And you may not speculate or use conjecture in determining whether such conscious pain and suffering actually did exist, but, if you find, based on your past experience, on common knowledge of all mankind, that there must have been some slight instance of such pain and suffering and that the burden of proof has been carried in that respect, then you may consider that in your verdict."

\* \* \* \* \* \*

"If you find an award for any conscious pain and suffering, you will also add that." (B. of E. Vol. V, pp. 720, 723)

We do not find in the record any instruction to the effect that the jury should consider loss of time in determining what amount should be awarded to plaintiff as compensatory damages.

Although it clearly appears from the evidence that the decedent was dead upon arrival at Baptist Hospital in Nashville, it does not clearly appear that he was immediately rendered unconscious upon occurrence of the accident.

The trial Court's charge makes reference only to "some slight instance of such pain and suffering" and leaves to the jury to determine from "common knowledge of all mankind" whether the decedent did have "some slight instance of such pain and suffering."

The jury was entitled to consider knowledge common to all mankind and therefore, we do not find this instruction to be improper under facts and circumstances of the case.

The defendants' second assignment of error is respectfully overruled.

The most serious question presented to us on this appeal is raised by the defendants' third assignment of error which is as follows:

"The court erred in its instructions to the jury with regard to the measure of compensatory damages, in that the jury, in addition to determining the pecuniary value of the life of the deceased, Henry C. Newman, and the funeral expenses, should consider the circumstances and conditions of his wife, his wife's age and life expectancy, and the services that he would have performed for his wife had he lived, and include in the verdict not only an amount for any lost capacity to earn that was lost, but also the portion of his earnings that he would have applied to the care and support of his wife, and by repeating and re-emphasizing such

erroneous instructions, which were as follows: You must appraise, in an impartial manner to the best of your ability, the pecuniary or money value of the decedent to his widow on the day that he died. In fixing that value, you should take into consideration the decedent's character, habits, and ability, *the circumstances and conditions of his wife, the services that he would have performed for his wife,* and the intellectual, moral and physical training that would apply to the training that he would have given the children. But there are no children, so you will not consider that portion. *But you will consider the portion of his earnings that he would, in the future, have applied to the care and support of his wife,* the amount, if any, by which had he not died as a result of his injuries, he would have increased his estate from his earnings and thus added to the amount that would be inherited from him. And you should consider the decedent's age and life expectancy, *and the age and life expectancy of that of his wife.* (Italics ours.)

\* \* \* \* \* \*

\* \* \* What portion of the decedent's earnings, what would have been the decedent's earnings had he lived, you will determine from the amount that he was earning prior to his death and also the probabilities with respect to his future earnings, the hazards of his occupation, the condition of his health, and the length of time that he would reasonably be expected to continue working.

You will be entitled to, and should, include in your verdict an amount for any lost capacity to earn that was lost by the wrongful act of the defendants. But in

considering the lost capacity to earn, you should also consider the probabilities that that capacity would have been exercised or made use of the decedent.

As I have said, it is the pecuniary value of the decedent's life that you must fix and that value is incapable of exact proof since it is prospective and contingent. Considering all of the elements to which I have referred, you must exercise your own common sense and sound judgment in fixing the amount of the pecuniary injuries suffered by the decedent's wife.''

The defendants excepted to the italicized portions of the trial Judge's instructions to the jury.

Under this assignment, defendants also refer to the fact that the plaintiff, Mrs. Ruby Lee Newman, testified that she had gallstones, and that she had been in bad health for a few years, to which testimony defendants excepted as being immaterial and irrelevant on the issue of pecuniary value of the life of decedent.

We have concluded that the portion of such instructions wherein the trial Court instructed the jury that they could take into consideration ''the circumstances and conditions of his wife, the services that he would have performed for his wife'', * * ''the portion of his earnings that he would, in the future, have applied to the care and support of his wife'' and ''the age and life expectancy of that of his wife'' constitutes reversible error.

In overruling the defendants' motion for new trial the trial Judge said that he relied heavily upon ''New York Pattern of Jury Instructions'' and further said, in effect, that the standard by which the pecuniary value of a

decedent's life in cases of this nature is determined "* * * needs to be cleared up by the Appellate Court for the use of the trial Courts * * *."

With all due respect to the trial Judge, we think this matter has already been clarified by the Appellate Courts of Tennessee.

In support of their third assignment the defendants cite Davidson Benedict Company v. Severson (1902), 109 Tenn. 572, 72 S.W. 967, wherein the Supreme Court laid down the guidelines which have since been followed by the Courts of this State in determining the measure of damages in wrongful death cases.

Also to the point, however, are some later cases, cited by defendants, one of which is Heggie v. Barley (1914), 5 Tenn.Civ.App. 78, in which the Court of Civil Appeals had under consideration a suit to recover damages for the wrongful death of a three year old child of one Eugene Gaines, for whose benefit the suit was brought.

In that case it was earnestly insisted by the defendant below that no recovery at all could be awarded because of the conduct of the father of said child, for whose benefit the suit was brought. In disposing of this insistence the Court said:

"It is most earnestly insisted on behalf of plaintiff in error that there can be no recovery in this case because of the conduct of Eugene Gaines, for whose benefit the suit was brought; * * * we are of opinion that the Courts can no more inquire into the worthiness of such beneficiaries in such personal injury cases than they can inquire into the worthiness or unworthiness of

those who are designated as beneficiaries of the estate of decedents. * * *'' Heggie v. Barley, supra, pp. 82,83.

Another case in which the Court of Civil Appeals followed the reasoning in Heggie v. Barley, supra, and cited that case, is Driver v. Arn and Card (1916), 6 Tenn. Civ.App. 582. That case was a suit filed for recovery of damages for the death of one John Driver.

One of the assignments of error was to the effect that the trial Court erroneously made an order upon the widow of John Driver to produce a copy of an alleged divorce bill filed by her in the Courts of Ohio. The Court, in sustaining this assignment, said:

"It is true that Mrs. Driver, the widow was the beneficiary of the suit, her husband having no children. But this did not change the form of the action. It was still the action of the husband brought by his administrator to recover the pecuniary value of his life. Whether Driver loved his wife or was mean to her were not strictly pertinent issues; Davidson vs. Severson, 109 Tenn. 572 [72 S.W. 967] ; Heggie v. Barley, 5 Higgins, 79.'' Supra, p. 585.

Another fairly recent case which deals with the subject is Memphis St. Ry. Co. v. Cooper (1958), 203 Tenn. 425, 313 S.W.2d 444. In that case the Supreme Court said:

"Thus it is seen by our authorities, which are absolutely uniform in this State up to the present time, that the recovery for the death of Cooper is not based on whether he left a widow and children or what-not, but is based upon the pecuniary value of the life of the man himself. Which is to be,

'* * * determined upon a consideration of his expectancy of life, his age, condition of health and strength, capacity for labor, and for earning money through skill in any art, trade, profession, occupation or business, and his personal habits as to sobriety and industry.' Davidson Benedict Co. v. Severson, 109 Tenn. 572, 72 S.W. 967.

And another reason of why it does not make any difference as to who brought this suit and qualified as administratrix, the mere fact that she was or was not his wife or that she was his wife living in adultery with another or that she had committed any one of the heinous crimes in the books, this makes no difference as to the amount of damages recovered or as to the recovery because this is not what the recovery is based on. See Johnson v. Morgan, 184 Tenn. 254, 198 S.W.2d 549, wherein a number of reported cases on a related subject are analyzed and quoted from copiously.

The argument obviously is made on behalf of the petitioners that since Rosie Lee Cooper was not the widow and these were not his children that this influenced the verdict of the jury—it being shown that they were. The idea of proving or showing in a cause of action of the kind the existence of a widow, children or other next of kin of deceased is *not for the purpose of increasing the damages, but only to show the existence of the beneficiaries provided for in the statute.* Collins v. East Tennessee Virginia & Georgia R. Co., 56 Tenn. 841; Davidson Benedict Co. v. Severson, supra, and others.'' (Italics ours.) Supra, pp. 432, 433, 313 S.W.2d p. 448.

The Statute which defines the measure of compensatory damage in this case is as follows:

"20-614. *Damages recoverable in wrongful death.*— Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages, as provided for by secs. 20-607 and 20-608, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and *also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.*" (Italics ours)

Another case in which this question is discussed is Potts v. Leigh (1931), 15 Tenn.App. 1. In that case the Court said:

"The theory of our cases seems to be that no new or independent right of action arises from death by wrongful act; that the pecuniary value of the life is its value to the estate of the deceased; that the amount of money representing this value represents also the loss which the beneficiary has suffered, because he is entitled, under the statute of distribution, to the money as the substitute for the life of the deceased; in other words, that the value of the life of the deceased represents the 'damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.' " Supra, pp. 10, 11.

■ According to the guidelines established in the above cited cases, one of the elements of damage in the case at bar is the pecuniary value of the life of decedent on the day that he died.

We think the pecuniary value of the decedent's life is the same as its value to his estate and the amount of money representing this value represents the pecuniary loss which the widow has suffered.

In our opinion, this is the meaning of the following language of the statute:

"* * * damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received." (T.C.A. sec. 20-614)

If the needs of the widow are minimal, the pecuniary value of the decedent's life is not thereby reduced, and conversely, if the needs of the widow are great, the pecuniary value of the decedent's life is not thereby enhanced. It is to be remembered that the matter under consideration here is pecuniary value and not pecuniary need.

The trial Judge should have instructed the jury that, for the purpose of determining the pecuniary value of decedent's life, they should take into consideration the life expectancy of decedent, his age, the condition of his health, his strength, his capacity for work and for earning money, and his personal habits as to sobriety and industry; all of these things however, to be modified by the fact that expectancy of life is, at most a probability, based upon experience, and also modified by the fact that the earnings of the same individual are not always the same and uniform. Potts v. Leigh, supra, and Memphis St. Ry. Co. v. Cooper, supra.

We are well aware of the cases holding that a judgment will not be reversed on the grounds of erroneous

instructions by the trial Court unless it affirmatively appears that such error affected the result. However, the instruction of which the defendants complain under this third assignment is of the type which is reasonably capable of influencing the jury to increase the amount which would have otherwise been awarded under a proper instruction and, in view of the size of the verdict in this case, even after it was reduced by remittitur, it appears that the jury was obviously influenced by this erroneous instruction.

Therefore, we must sustain the defendants' third assignment of error.

In their fifth assignment of error the defendants insist that the verdict of the jury was excessive. However, since the case must be remanded for a new trial on the issue of compensatory damages, it would be inappropriate at this time for us to discuss this fifth assignment and also inappropriate for us to discuss the plaintiff's single assignment of error which challenges the action of the trial Court in suggesting a remittitur and therefore, these assignments are pretermitted.

That portion of the trial Court's judgment by which it is determined that the defendants, John H. Simmons, Middle Tennessee Foods, Inc., and G. & W. Food Products of Ohio, are liable to plaintiff for compensatory damages is affirmed; that portion of the trial Court's judgment by which it is determined that the defendants are not liable for punitive damages is also affirmed and that portion of the trial Court's judgment by which it is determined that Midwest Pizza Company is not liable for any damages is also affirmed.

That portion of the trial Court's judgment awarding the plaintiff compensatory damages in the sum of $50,-000.00 is reversed and set aside and the case is remanded to the Circuit Court of Davidson County for a new trial upon the single issue of compensatory damages to be awarded to the plaintiff.

It has been held that the Appellate Court may limit a retrial of the case on remand to the single question of ascertainment of damages. Gulf Refining Co. v. Frazier (1934), 19 Tenn.App. 76, 83 S.W.2d 285; Jones et al. v. Allied American Mutual Fire Ins. Co. (1954), 38 Tenn. App. 362, 274 S.W.2d 525.

The costs of this appeal will be paid by the plaintiff, the costs which have already accrued in the trial Court will be paid by the defendant and the costs which will accrue in the trial Court upon remand will abide the judgment of the trial Judge.

Shriver, P. J., (M.S.), and Todd, J., concur.