John DOE, c/o National Union Fire
Insurance Co., c/o Travelers
Indemnity Co., Appellant,

v.

Bonnie L. BINKER, et al., Appellees.

Bonnie L. BINKER, et al., Appellants,

v.

John DOE, et al., Appellees.

Nos. 82–1255, 82–1256, 82–1631
and 82–1632.

District of Columbia Court of Appeals.
Argued Oct. 10, 1984.
Decided Feb. 28, 1985.

Charles E. Gallagher, Jr., Alexandria, Va., with whom William B. Spellbring, Jr., Upper Marlboro, Md., was on the briefs, for John Doe, c/o National Union Fire Insurance Co.

David P. Durbin, Washington, D.C., with whom Dwight D. Murray, Washington,

D.C., was on the brief, for John Doe, c/o Travelers Indemnity Co.

William T. Freyvogel, Arlington, Va., with whom John M. Clifford, Washington, D.C., was on the briefs, for Bonnie L. Binker, et al.

Gary Ulmer, Washington, D.C., with whom William R. Scanlin, Washington, D.C., was on the brief, for Donald Peden.

Before PRYOR, Chief Judge, and NEWMAN and ROGERS, Associate Judges.

PRYOR, Chief Judge:

 Bonnie L. Binker as administratrix of the estate of her husband, Carl W. Binker, Jr., brought suit under the D.C. Wrongful Death Act (D.C.Code § 16–2701 (1981)), and the D.C. Survival Act (id. § 12–101), against an unidentified motorist, John Doe, whose alleged negligence caused the death of Mr. Binker in an automobile collision. At the time of his death, Mr. Binker was covered by two automobile liability insurance policies, one issued by the National Union Fire Insurance Company (hereinafter National Union) and one issued by the Travelers Indemnity Company (hereinafter Travelers). Both contained uninsured motorist provisions.[1] Pursuant to these provisions, since John Doe was alleged to be unknown and uninsured, National Union and Travelers were potentially liable to Mr. Binker. Accordingly, they defended John Doe at trial. Travelers filed a third-party complaint against Donald E. Peden, the driver of a third automobile involved in the accident. The jury returned a verdict for Mr. Peden on the third-party complaint.[2] It also returned a verdict for the plaintiffs under both the wrongful death and survival statutes. The defendants then moved for judgment n.o.v. and a new trial or in the alternative a remittitur. The trial court denied the motions for judgment n.o.v. It denied the motion for a new trial, provided that plaintiffs accept a remittitur, reducing the jury verdict under the wrongful death statute from $200,000 to $120,000. Plaintiffs accepted the remittitur. These cross-appeals followed.

I

On the evening of September 5, 1979, Carl W. Binker, Jr., a thirty-seven year old delivery route manager employed by the Washington Star newspaper, was killed in an automobile accident on the Fourteenth Street Bridge in the District of Columbia. At the time of the accident, Mr. Binker was returning to the Washington Star building in the District of Columbia after completing his newspaper deliveries in Northern Virginia. Mr. Binker was driving a truck owned by the Washington Star and was accompanied by a fifteen year old "jumper," Leon Towell.

According to Mr. Towell's testimony, as Mr. Binker and he approached the bridge at approximately 6:30 p.m., it was raining very hard, there were high winds, and visibility was poor. Because of the weather conditions, Mr. Binker had turned on the truck's headlights, windshield wipers and defroster, and was driving at a reduced speed. Upon entering the bridge, Mr. Binker was traveling in the second lane

1. National Union had issued a policy insuring the Washington Star Co., Mr. Binker's employer and the owner of the vehicle Mr. Binker was driving at the time of his death. Travelers had issued a policy insuring Mr. Binker personally.

2. Following the jury's verdict in favor of Mr. Peden, Travelers moved for judgment n.o.v. Travelers asserts on appeal that the trial court erred in denying its motion. We find Travelers' claim to be without merit.

Judgment n.o.v. like a motion for a directed verdict is only appropriate when, in viewing the evidence in the light most favorable to the party against whom the motion is made, "the probative facts are undisputed and ... reasonable minds can draw but one inference from them." Mills v. Cosmopolitan Ins. Agency, Inc., 424 A.2d 43, 45 (D.C.1980) (quoting Aylor v. Intercounty Constr. Corp., 127 U.S.App.D.C. 151, 155, 381 F.2d 930, 934 (1967)).

In viewing the evidence in the light most favorable to Mr. Peden, we find that a reasonable jury drawing reasonable inferences could have entered a verdict in favor of Mr. Peden. Accordingly, we affirm the denial of the motion for judgment n.o.v.

from the left of the bridge's four lanes. Mr. Towell testified that he saw a small Toyota truck approximately twenty-five feet ahead stopped in their lane of traffic. The truck did not have on its lights or emergency flashers. Mr. Towell testified that he shouted "watch out." Mr. Binker immediately swerved his vehicle into the left lane, which was clear of traffic, but he could not control the truck, which hit the left side of the bridge's concrete guard rail. Mr. Binker's vehicle traveled some distance along the guard rail and then swerved back toward the center lanes of the bridge. As the truck swerved, it began to tip over onto two wheels. Traveling on only two wheels, the truck crossed over four lanes of traffic, fell onto its left side and slid into the right side of the bridge. According to testimony at trial, the truck traveled approximately 98 feet from the first point of impact to the point at which it came to a stop. Almost immediately after the truck stopped at the right guard rail it was struck by an automobile driven by Mr. Donald Peden. Mr. Peden's automobile apparently struck the truck's exposed gas tank, causing the truck to burst into flames. Mr. Towell managed to climb out of the burning truck but Mr. Binker, who was pinned underneath the vehicle, was unable to escape and died as a result of his injuries.

Dr. Rak Woon Kim, Deputy Medical Examiner for the District of Columbia, performed the autopsy. Dr. Kim testified at trial that Mr. Binker died as a result of multiple fractures, and internal injuries resulting from both the fractures and extensive body burns. He testified that death was almost, though not, immediate.

The jury awarded a total of $200,000 under the wrongful death statute[3] to Mrs. Binker and to Mr. Binker's three daughters. It also awarded Mr. Binker's estate $200,000 under the survival statute.

On appeal, National Union and Travelers claim that the trial court erred in allowing the jury to consider pain and suffering as a measure of damages under the survival statute and that they are, accordingly, entitled to a new trial. Mrs. Binker has cross-appealed, seeking to reinstate the full jury verdict in the wrongful death claim. She asserts that the trial court erred in granting defendant's motion for a remittitur.

## II

### A.

At trial, National Union and Travelers moved for a directed verdict on the issue of pain and suffering, which the trial court denied. The basis for their motion, and their claim on appeal, is that Mrs. Binker did not establish by substantial evidence that Mr. Binker endured "conscious pain and suffering." They argue that it is a well accepted rule that *conscious* pain and suffering as opposed to just pain and suffering must be shown before the jury may be allowed to consider this issue as an element of damages under the survival statute.

■ The issue of damages in a wrongful death or survival action, as in other actions, is particularly within the province of the jury. Notwithstanding the jury's broad discretion in assessing damages, there must be substantial evidence upon which the award is predicated. *See* 2 S. SPEISER, RECOVERY FOR WRONGFUL DEATH § 9:2 (1975). To be substantial, the evidence must be more than a "scintilla," but it "need not point entirely in one direction." *Baltimore & O.R. Co. v. Postom*, 85 U.S. App.D.C. 207, 209, 177 F.2d 53, 55 (1949).

■ Accordingly, on the issue of pain and suffering as an element of damages under the survival statute, a directed verdict is only proper where "the evidence is so clear that reasonable men could reach but one conclusion." *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979) (quoting *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C.1973)). Where there is conflicting

---

3. Under the award, $176,000 was given to Bonnie L. Binker, $3,000 to Christiana Binker, $5,000 to Michele Binker, and $16,000 to Georgia Binker.

evidence that conflict must be resolved by the jury, *id.* at 1263; *Baltimore & O.R. Co. v. Postom, supra,* 85 U.S.App.D.C. at 208, 177 F.2d at 54, however, the jury may not be left to merely speculate about the evidence. *See Rule v. Bennett,* 219 A.2d 491, 494 (D.C.1966); *cf. Edison v. Scott,* 388 A.2d 1239, 1241 (D.C.1978).

We recognize that in many courts a plaintiff bears the burden of proving that the decedent underwent "conscious" pain and suffering before that element of damages will be allowed to be considered by the jury. *See, e.g., St. Louis, Iron Mountain & Southern Railway Co. v. Craft,* 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1915); *Dugal v. Commercial Standard Insurance Co.,* 456 F.Supp. 290, 292 (W.D. Ark.1978); *Intelisano v. Greenwell,* 155 Conn. 436, 232 A.2d 490, 494 (1967); *Ory v. Libersky,* 40 Md.App. 151, 389 A.2d 922, 928 (1978); *see also* 3 M. MINZER, DAMAGES IN TORT ACTIONS § 21–10 *et seq.* (1982); 2 S. SPEISER, *supra,* § 14.10 *et seq.* The courts, however, differ considerably over the type and amount of evidence, which the plaintiff must introduce on the issue of the decedent's "consciousness," to satisfy this burden. *See* 3 M. MINZER, *supra,* § 21.11[2]; 2 S. SPEISER, *supra,* § 14.12.

■ Understanding that circumstantial evidence, by its nature, is probative in varying degrees, we differ with our dissenting colleague and decline to accept appellant's assertion of insufficiency which in effect would require direct evidence on this issue as contrasted to circumstantial evidence. As in other areas, circumstantial evidence may be sufficient to establish a case for the jury. In fact, in survival actions, the circumstances surrounding an accident often preclude the introduction of direct evidence of consciousness or of pain and suffering. 3 M. MINZER, *supra,* § 21.11[3]. Thus, courts have held that the existence of conscious pain and suffering may be

inferred from the nature of the decedent's injuries or the circumstances surrounding death. *Id.; see In re Sincere Navigation Corp.,* 329 F.Supp. 652 (E.D.La.1971), *modified on other grounds,* 529 F.2d 744 (5th Cir.1976). For example, in cases where the decedent died by drowning or burning, an inference of conscious pain and suffering has often been permitted. 3 M. MINZER, *supra,* § 21.11[3]; *see, e.g., Campbell v. Romanos,* 346 Mass. 361, 365, 191 N.E.2d 764, 768 (1963).

■ Upon our review of the trial record, we find there was substantial circumstantial evidence presented on the issue of pain and suffering, from which the jury could draw reasonable inferences. Among other things, the jury heard testimony from Dr. Kim about the cause of Mr. Binker's death, as well as eyewitness accounts of the moments immediately before and after the fatal accident. In light of these circumstances, there was sufficient evidence introduced by Mrs. Binker, on the issue of pain and suffering, so that the jury was not required to speculate about its verdict.[4] *See, e.g., Newman v. Simmons,* 62 Tenn. App. 610, 466 S.W.2d 506 (1971).

### B.

National Union and Travelers raise alternative grounds to support their contention that the trial court improperly denied their motion for a directed verdict. They alleged to the trial court, both that Mrs. Binker failed to establish a prima facie case of negligence against the unidentified driver, John Doe, and that Mr. Binker was contributorily negligent as a matter of law. These claims are unsupported.

■ On the issue of John Doe's negligence, both Leon Towell and Donald Peden testified that the red John Doe vehicle was standing in a lane of traffic in the middle of the bridge without its lights on or its warning devices flashing. They further

---

4. We emphasize the narrowness of our holding. Whether a jury question exists with regard to a conscious pain and suffering issue, must be determined only after a careful examination of the facts of each case. *See Cook v. Ross Island Sand & Gravel Co.,* 626 F.2d 746 (9th Cir.1980); *Gaber Co. v. Rawson,* 549 S.W.2d 19 (Tex.Civ.App. 1977).

testified that they saw a man standing next to the red vehicle. On the issue of contributory negligence, Mr. Towell testified about the very poor weather conditions which existed the night of the accident, as well as the precautions Mr. Binker took upon entering the bridge. We conclude that there was sufficient evidence from which a reasonable jury could find that John Doe was negligent and that Mr. Binker did everything reasonably possible to avoid the accident, and as such was not contributorily negligent. *See Washington v. Capital Cab Cooperative Ass'n,* 363 A.2d 305, 306 (D.C.1976).

### III

### A.

In addressing Mrs. Binker's claim that the trial court erred in granting a remittitur, we must first determine whether Mrs. Binker should even be allowed to challenge the propriety of the remittitur in her cross-appeal. This is an issue of first impression for this court.

██ The general common-law rule is that a plaintiff may not file a direct appeal from a remittitur he or she has accepted. *See, e.g., Donovan v. Penn Shipping Co.,* 429 U.S. 648, 650, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977). The rationale underlying this rule is that the plaintiff is deemed to have made a voluntary election to accept a remittitur in lieu of suffering the expense and risks of a new trial, and therefore, is precluded from challenging the reduced verdict on direct appeal.

Mrs. Binker argues that the general rule should not apply where a plaintiff seeks to contest the granting of remittitur on *cross-appeal.* She points out that many courts, beginning with the Wisconsin Supreme

Court in *Plesko v. Milwaukee,* 19 Wis.2d 210, 120 N.W.2d 130 (1963), have abandoned the strict common-law rule in situations where the plaintiff contests the remittitur on cross-appeal and not direct appeal.[5]

In *Plesko v. Milwaukee,* the court permitted the plaintiff/appellee in a negligence action to challenge a remittitur she had accepted. The court reasoned that the main objective underlying the procedure of remittitur is to avoid the expense, delay, and uncertainty of a new trial. However, where a defendant appeals a judgment after being granted a remittitur this objective has been undercut. The court observed:

> When plaintiff is forced to undergo an appeal by the action of an opposing party, after plaintiff has accepted judgment for such reduced damages, it seems unfair to prevent his having a review of the trial court's determination leading to the reduction in damages, especially if plaintiff had accepted same only to avoid the delay and expense attending an appeal.

*Id.* at 219, 120 N.W.2d at 139.

Similarly, other state courts have held that allowing the plaintiff to challenge a remittitur on cross-appeal promotes judicial economy by encouraging the defendant to pursue only meritorious appeals. A defendant who takes an appeal in a case in which a remittitur has been accepted runs the risk that the appellate court may reinstate the full original verdict. *See, e.g., Burns v. McGraw-Hill Broadcasting Co., supra* note 5, 659 P.2d at 1355.

██ We agree that the rationale supporting the traditional common law rule is absent when the plaintiff is forced into the position of responding to an appeal brought by the defendant. We conclude that where the party who benefits from a remittitur

5. *See, e.g., McCormick v. Alabama Power Co.,* 293 Ala. 481, 306 So.2d 233 (1975); *Morrison v. Lowe,* 274 Ark. 358, 625 S.W.2d 452 (1981); *Burns v. McGraw-Hill Broadcasting Co.,* 659 P.2d 1351 (Colo.1983); *Jangula v. Klocek,* 284 Minn. 477, 170 N.W.2d 587 (1969); *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780 (Mo. 1977); *Mulkerin v. Somerset Tire Serv., Inc.,* 110 N.J.Super. 173, 264 A.2d 748 (1970); *Terry v. Zions Coop. Mercantile Inst.,* 605 P.2d 314 (Utah 1979); *see generally* Annot., 16 A.L.R.3d 1327 (1967). Additionally, at least three states, Nebraska, New York and Texas, by statute or by rule of civil procedure, allow a plaintiff to challenge a remittitur on cross-appeal.

appeals the judgment on other grounds the party who accepts a remittitur may contest the remittitur on cross-appeal.

## B.

We next turn to the question of whether the granting of a remittitur in this case was error.

The granting of a motion for remittitur is particularly within the discretion of the trial court. *City Stores Co. v. Gibson,* 263 A.2d 252 (D.C.1970). Our review is limited to determining whether there has been an abuse of discretion. *Taylor v. Washington Terminal Co.,* 133 U.S.App. D.C. 110, 112–13, 409 F.2d 145, 147–48, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969).

Mrs. Binker claims that the trial court abused its discretion by ordering a remittitur of $80,000 because the jury's verdict was not excessive in light of all the evidence the jury was asked to consider. We agree.

Two main elements form the basis for recovery under the Wrongful Death Act. The first element compensates for pecuniary loss—calculated as the annual share of decedent's dependents in the decedent's earnings, multiplied by the decedent's work life expectancy, and discounted to present value. The second element compensates for the value of the services lost to the family as a result of decedent's death. *See Runyon v. District of Columbia,* 150 U.S.App.D.C. 228, 231, 463 F.2d 1319, 1322 (1972); *Graves v. United States,* 517 F.Supp. 95, 99–100 (D.D.C.1981).

Accordingly, the jury was instructed to consider first, in making their award, the financial loss which each beneficiary suffered. Financial loss was defined as the "financial support which the deceased furnished or could have been expected to provide each beneficiary." Second, the jury was instructed to place a "reasonable value [on] the service which the deceased would have provided each beneficiary over their life." In this regard, the jury was told to consider *inter alia* the "loss of care, education, training, guidance and personal advice" to Mr. Binker's children.

With respect to the first element of damages, Dr. Joseph L. Tryon, Mrs. Binker's expert economist, testified that the present value of the loss of financial support to Mr. Binker's beneficiaries was $118,154. This figure assumed an inflation rate of 5.5%, productivity increase rate of 1%, unemployment factor of 7.05%, and a present value discount rate of 7%.

With respect to the second element of damages under the statute, the evidence adduced at trial through the testimony of Mr. Binker's wife and his two older daughters showed that Mr. Binker, among other things, took care of the children on his days off, prepared meals for his family, took the children to the doctor and sporting events, performed home repairs, grocery shopping and other activities. The loss of these services cannot be quantified with mathematical precision. *See Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 590, 94 S.Ct. 806, 817, 39 L.Ed.2d 9 (1974); *Elliott v. Michael James, Inc.,* 182 U.S.App. D.C. 138, 145, 559 F.2d 759, 766–67 (1977); *Hord v. National Homeopathic Hospital,* 102 F.Supp. 792, 794 (D.D.C.1952), *aff'd,* 92 U.S.App.D.C. 204, 205, 204 F.2d 397, 398 (1953).

In its order granting defendants' motion for remittitur, the trial court stated:

> a. The jury's verdict of $200,000 for Mrs. Binker and her children is almost double the sum of $118,154 which expert witness Tryon testified was the present value of the contribution which Mr. Binker would have made to his wife and children during the remainder of their joint lives.
>
> b. There is no basis in the evidence for the jury's conclusion that Carl Binker would contribute $200,000 to his wife and minor children.

It is clear from the order that the trial court examined only the first element of

damages—loss of financial support—in determining that the jury's award was excessive. Moreover, the trial court misconstrues the purpose of Dr. Tryon's testimony. Expert economic testimony in a wrongful death case represents only a guideline and "may not be adopted at its face value as the sole basis for the determination of damages for death." *Thomas v. Potomac Electric Power Co.*, 266 F.Supp. 687, 695 (D.D.C.1967). In wrongful death actions, "[t]he amount of damages to be awarded must be based largely on the good sense and sound judgment of the jury ... [and] all the facts and circumstances of the case...." *Rankin v. Shayne Brothers, Inc.*, 98 U.S.App.D.C. 214, 215–16, 234 F.2d 35, 36–37 (1956); *see also Hord v. National Homeopathic Hospital, supra*, 102 F.Supp. at 794 (pecuniary loss from death of family member cannot be precisely ascertained).

■ In a related issue, National Union and Travelers assert on appeal that the trial court erred in admitting all of Dr. Tryon's testimony concerning Mr. Binker's potential income. They argue that since Mr. Binker's employer, the Washington Star Co., went out of business in August 1981—two years after Mr. Binker's death—Dr. Tryon should not have been allowed to project any specific earnings for Mr. Binker after 1981.

We conclude that the trial court properly admitted Dr. Tryon's testimony. As previously stated, expert economic testimony is only a guideline for the jury and not conclusive evidence. *See Thomas v. Potomac Electric Power Co., supra*, 266 F.Supp. at 695. We note that Dr. Tryon's income projections were reduced by an unemployment factor of 7.05%. National Union and Travelers had an opportunity to inform the jury about the closing of the Washington Star in August 1981, and Travelers did so in its closing argument. The jury was then free to calculate its award based on all the facts and circumstances.

■ Moreover, it is a well-settled rule that damages in a wrongful death action should be measured from the date of the decedent's death, and not some later date, on the basis of relevant factors. *See Coleman v. Moore*, 108 F.Supp. 425, 427 (D.D.C.1952); *see also Blumenthal v. United States*, 189 F.Supp. 439 (D.Pa.1960); Annot., 30 A.L.R. 121 (1924).

Upon our review of the trial record, we find there was substantial evidence presented on the issue of loss of services on which the jury could have based an award. In viewing all the facts and circumstances of the case, we do not find that the jury's award of $200,000 under the wrongful death statute was "so great as to shock the conscience." *Wingfield v. Peoples Drug Store, Inc.*, 379 A.2d 685, 687 (D.C.1978).

Accordingly, we find the court abused its discretion in granting a remittitur and remand for reinstatement of the jury's verdict.

*So ordered.*

ROGERS, Associate Judge, dissenting to Part II A:

The majority holds that Mrs. Binker met her burden of proof to show conscious pain and suffering. See majority opinion Part II A. The only relevant evidence before the jury was that after the truck hit the guard rail it traveled a distance, and eventually turned onto its side and skidded to a halt approximately ninety-eight feet from the guard rail, and the deputy medical examiner's testimony that Mr. Binker's death was not instantaneous. No evidence was offered that Mr. Binker, who had fallen through an open door when the truck turned over and was partly pinned underneath the truck in a face down position, was conscious at any time after the truck turned over. Nor was there any evidence that he had suffered any injury prior to that time, and the medical testimony contradicted any suggestion that Mr. Binker was alive at the time the fire started. Under the majority's opinion, proof of injury where death was not instantaneous constitutes sufficient evidence of conscious pain

and suffering to survive a directed verdict. In my view, this possibility-of-life threshold assumes consciousness in fact, and fails to provide guidance for evaluating the worth of any conscious pain and suffering and, hence, invites verdicts based on speculation. Accordingly, I respectfully dissent.

"Conjecture will not suffice" to establish conscious pain and suffering of the decedent. 2 S. SPEISER, RECOVERY FOR WRONGFUL DEATH § 14:10 (2d ed. 1975). The plaintiff has the burden of showing conscious pain, and although it may be inferred from the type of injury, the burden is heavy. Thus, "evidence of movement, moaning and groaning, and clenching and unclenching of hands by the decedent has been held too speculative to raise a jury question as to conscious suffering." *Id.* (citing *Fialkow v. DeVoe Motors, Inc.*, 359 Mass. 569, 270 N.E.2d 798 (1971)) (evidence of grasping, gurgling, heavy breathing, and a very faint noise coming from decedent after he was injured); *Carr v. Arthur D. Little, Inc.*, 348 Mass. 469, 204 N.E.2d 466 (1965). Evidence that the decedent on several occasions during hospitalization responded to a spoken word by moving parts of his body also has been held insufficient to establish pain and suffering. 2 S. SPEISER, *supra*, at § 14:10 (citing *Parker v. McConnell Manufacturing Co.*, 40 A.D.2d 587, 334 N.Y. S.2d 586 (1972)). Indeed, expert testimony may be required on whether the victim was capable of consciousness and had the capacity to feel pain at the relevant time.[1] Moreover, while circumstantial evidence may be sufficient to show conscious pain and suffering, such evidence would need to show at least that it was unlikely the victim would have been rendered unconscious prior to his final moments. *See Ory v. Libersky*, 40 Md.App. 151, 389 A.2d 922 (1970) (mere fact of consciousness after an accident does not inescapably lead to the conclusion that pain is being suffered); 2 S. SPEISER, *supra*, at § 14:10.

Mrs. Binker offered no evidence of Mr. Binker's consciousness. She relied heavily, and almost exclusively, on the testimony of the deputy medical examiner who performed an autopsy on Mr. Binker's body the day after the accident and testified that he was "uncertain" whether Mr. Binker would have survived his serious injuries, but conceded, in response to a question by Mrs. Binker's attorney, that had the fire not occurred, there was a remote chance of survival. Neither the deputy medical examiner nor any other witness testified that Mr. Binker was or could have been, from a medical standpoint, conscious between the time he sustained fractures from the impact of the truck turning over and the explosion and fire which occurred almost immediately after the truck had come to a stop. The deputy medical examiner testified Mr. Binker died of multiple fractures, and internal injuries caused by the fractures and extensive thermal burns, but that no carbon monoxide was found in his blood, lungs or the trachea-bronchi that feeds into the lungs, facts which would generally indicate the absence of life at the time the fire started. A passenger riding with Mr. Binker testified that he did not talk to Mr. Binker or see him move once the truck turned over, and thought Mr. Binker had fallen out of the truck when it turned over. Because there was no evidence, direct or circumstantial, of conscious pain and suffering, the court erred in submitting that issue to the jury.

---

1. *See generally* 2 S. SPEISER, *supra*, at § 14:9. Recovery is barred where death was instantaneous or practically so and no award should be made for any pain and suffering substantially contemporaneous with death or a mere incidence to it. *Id. See also Northern Lights Motel,* *Inc. v. Sweaney,* 561 P.2d 1176, 1190 (Alaska 1977) ("Recovery can be had only for pain consciously experienced, and events subsequent to unconsciousness are not compensable.") (quoting *Burrous v. Knotts,* 482 S.W.2d 358, 363 (Tex. Civ.App.1972)).