Charles E. RUNYON, Executor of the
Estate of Charles B. Runyon,
Deceased, Appellant,

v.

**DISTRICT OF COLUMBIA.**

No. 24924.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 11, 1972.

Decided July 18, 1972.

**1320**

Mr. Harvey B. Cohen, Washington, D. C., for appellant. Messrs. Peter A. Greenburg and Lawrence M. Mann, Washington, D. C., also filed appearances for appellant.

Mr. Leo N. Gorman, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee. Mr. Hubert B. Pair, Acting Corp. Counsel at the time the record was filed, also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, WILKEY, Circuit Judge, and RONALD N. DAVIES,* Senior Judge, United States District Court for the District of North Dakota.

FAHY, Senior Circuit Judge:

Charles B. Runyon was crossing Key Bridge in this City when the automobile he was driving was struck from the rear by a vehicle driven by Thomas Claffy. After the impact, the Runyon vehicle traveled over the bridge curb, struck a lamp post and fell through the guard rail of the bridge into the Potomac River. Runyon died, as was later determined, of asphyxiation due to drowning. He was survived by his widow, an infant son Clyde, an infant daughter Apryl, and two children who had reached their majority.

Suit was brought by the Executor of the Estate of Charles B. Runyon against Claffy and the District of Columbia, under both the District of Columbia Sur-vival Statute, D.C.Code § 12–101, and the Wrongful Death Act, D.C.Code § 16–2701 et seq. The District of Columbia had designed, constructed and maintained the guard rail. The jury found that Claffy had been negligent in the operation of his vehicle and that the District of Columbia had been negligent in the design and maintenance of the guard rail. The jury found that the negligence of both proximately caused decedent's death.

The verdict returned in open court was as follows:

We, the Jury, in the above-entitled cause find in favor of the Plaintiff as administrator under the survival action statute against the Defendant, District of Columbia and the Defendant Thomas Claffey and assess Plaintiff's damages at the sum of $65,000.-00.

We, the Jury, in the above-entitled cause find in favor of the Plaintiff as administrator under the wrongful death statute against the Defendant District of Columbia and the Defendant Thomas Claffey and we allocate said damages to the real parties [in] interest as follows:

To Mary Runyon Tucker, the surviving widow, $10,000.00;

To Clyde Benjamin Runyon, surviving son, $27,500.00;

To Apryl Wennona Runyon, surviving daughter, $27,500.00.

Upon motion of the District of Columbia the court ordered a new trial unless plaintiff agreed to a reduction of the amount of damages awarded in the survival action from $65,000.00 to $1.00. From this order the plaintiff-executor appeals.

The District Court entered the above order, as explained in a Memorandum Opinion, on the ground that in the court's view in awarding recovery of identical amounts under both the Survival Statute and the Wrongful Death Act, the jury had awarded double recov-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

ery for the same elements of damages. So concluding the court ordered "that nominal damages in the amount of $1.00 only may be awarded in this case under the Survival Statute and that any amount above that is excessive."

## I

■ Preliminarily, we note that in this jurisdiction, if a tort causes death, two interests have been invaded. The first is the interest of the deceased in the security of his person and property. The personal representative of the estate of deceased may bring an action on behalf of the estate to recover for the invasion of that interest. 12 D.C.Code § 101 (1967).[1] The second is the impairment of the interest of the deceased's spouse and next of kin. They may recover pecuniary loss resulting from the death provided the personal representative of deceased's estate prevails in their behalf in the wrongful death action established by statute. 16 D.C.Code §§ 2701, 2702 (1967).[2] Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344 (1954); Sornborger v. District Dental Laboratory, Inc., 105 U.S.App.D.C. 290, 266 F.2d 694 (1959). See also 2 F. Harper & F. James, Law of Torts § 24.2 (1956); Schumacher, Rights of Action

under Death and Survival Statutes, 23 Mich.L.Rev. 114 (1924); Note, The Inadequacies of Existing "Wrongful Death" and "Survival" Legislation, 44 Harv.L.Rev. 980 (1931).

## II

■ Aside from the settled question that both actions may be brought in the circumstances of the present case is the question of damages. This court has not previously had occasion to address the somewhat complex question of the recovery permissible under both statutes, though we have stated, and now reiterate, "that double recovery for the same elements of damage should of course be avoided." Hudson v. Lazarus, 95 U.S.App.D.C. at 21, 217 F.2d at 349. Moreover, the present case illustrates a need to articulate more fully the legal principles governing damages that may be recovered in the situation where the tortious act which is the basis of recovery under both actions results in death.

## III

■ Pursuant to the Survival Statute we think it is proper for the estate of the deceased to recover an amount based on probable net future earnings, discounted to present worth, ascertained as

---

1. Section 12–101 provides:
 On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action survives in favor of or against the legal representative of the deceased. In tort actions for personal injuries, the right of action is limited to damages for physical injury, excluding pain and suffering resulting therefrom.

2. Section 2701 provides in pertinent part:
 When, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act, neglect, or default of a person or corporation, and the act, neglect, or default is such as will, if death does not ensue, entitle the person injured, or if the person injured is a married woman, entitle her husband, either separately or by joining with the wife, to maintain an action and recover damages, the person who or corporation

that is liable if death does not ensue is liable to an action for damages for the death, notwithstanding the death of the person injured, even though the death is caused under circumstances that constitute a felony.
 The damages shall be assessed with reference to the injury resulting from the act, neglect, or default causing the death, to the spouse and the next of kin of the deceased person; and shall include the reasonable expenses of last illness and burial. Where there is a surviving spouse, the jury shall allocate the portion of its verdict payable to the spouse and next of kin, respectively, according to the finding of damage to the spouse and next of kin. . . .
 Section 2702 provides:
 An action pursuant to this chapter shall be brought by and in the name of the personal representative of the deceased person, and within one year after the death of the person injured.

now stated. Customarily the probable earnings of deceased had he lived is proved by using actuarial tables, based upon large segments of a particular population, together with evidence of the deceased's earnings history. Gross probable future earnings ordinarily approximate his projected average annual income multiplied by the number of years of his life that had he survived he would be earning income, known as probable work life or work life expectancy. From this gross amount is subtracted probable income taxes, both state and federal, for the term of the probable work life, and the amount the deceased would have required to maintain himself and contribute to those entitled to recover under the Wrongful Death Act. The resulting sum is adjusted to reflect the reasonable accumulations of the deceased, usually determined by multiplying the sum referred to by a reasonable percentage to reflect the rate of return had it been invested. This adjusted amount is the probable net future earnings of the deceased. *See* Rohlfing v. Moses Akiona, Ltd., 45 Haw. 373, 369 P.2d 96 (1961); Pezzulli v. D'Ambrosia, 344 Pa. 643, 26 A.2d 659 (1942); Ferne v. Chadderton, 363 Pa. 191, 69 A.2d 104 (1949); 6 M. Belli, Modern Trials § 280 (1963); *cf*. F. Harper & F. James, *supra*, §§ 25.13–25.16. The statute itself precludes recovery for pain and suffering.

### IV

 The proper recovery under the Wrongful Death Act is principally the amount of financial loss to the spouse and next of kin.[3] The share of each person entitled to recover under the Wrongful Death Act is customarily determined by first ascertaining the annual share of each in the deceased's earnings multiplied by the appropriate period of years determined as now stated. If the respective life expectancy of the spouse and next of kin is less than

the work life expectancy of the deceased, each is limited to recovery for the years of his or her life expectancy. If the life expectancy of the spouse or next of kin is greater than the work life expectancy of the deceased, each is limited to recovery for the period of the deceased's work life expectancy. The amounts recovered are the future contributions toward the maintenance of the spouse and next of kin that the deceased probably would have made had the act which forms the basis of the actions not occurred. Any part of each share might be discounted to present worth if it could be shown that such part would have been utilized for investment purposes. *See* Rohlfing v. Moses Akiona, Ltd., *supra*; M. Belli, *supra*, § 280; *cf*. F. Harper & F. James, *supra*, §§ 25.13–25.16. In addition, the statute provides that the parties entitled to recover under the Wrongful Death Act may be compensated for funeral expenses and where applicable, reasonable last illness expenses. The parties so recovering may not be compensated for their grief.

### V

 In the present case, appellant-executor challenges the reduction by the trial judge of the verdict under the Survival Statute, premised by the judge on his conclusion that the jury had awarded double recovery. No other basis for the reduction is asserted.

The evidence, believable by the jury, was to the effect that the decedent's average probable future net annual income would be $13,900.00. This annual income multiplied by 21.5 years of deceased's work life expectancy, also shown by the evidence, amounted to $186,800.00 when discounted to present worth. There is no dispute that these calculations were supported by the evidence. The $130,000.00 total award of damages accordingly comes well within the evidence of deceased's probable future earnings during his life expectancy, discounted to present worth.

---

3. In the present case the next of kin who might recover were described by the court as the dependent next of kin; as to which no objection is presented.

Nothing in the evidence indicates that the estate or the widow and children recovered twice for the same compensable interest. The jury were authorized by the instructions to award pecuniary loss under both the Survival Statute and the Wrongful Death Act. The pecuniary loss to an estate, however, does not coincide with the pecuniary loss to those entitled to recover under the Wrongful Death Act. As noted above, loss to the estate is represented by that part of the deceased's net probable future earnings that probably would have been utilized by the deceased to enlarge his estate, whereas loss to the spouse and next of kin is represented by the loss of a source of maintenance for such things as food, clothing, shelter, educational expenses and the like. The award in this case, construed as $130,000.00, is well within what the evidence shows is the total pecuniary loss to the estate and to those entitled to recover under the Wrongful Death Act. There is no evidence that the jury award compensates for the same element of damages more than once. In such a situation, we decline to uphold the action of the District Court in reducing the verdict returned under the Survival Statute.

VI

It is true that the basis for distribution of the total, as set forth in the verdict, is not clearly traceable in the evidence. But once it is decided, as we do, that the verdict should be construed as one for $130,000.00 for pecuniary loss suffered by both the estate and the spouse and next of kin, double recovery does not follow from the equal division made of the total between the estate under the Survival Statute and the beneficiaries of the Wrongful Death Act.

It would of course enable the court to follow more accurately its reasoning were the jury required by the instructions to analyze the evidence of annual net earning capacity during decedent's life expectancy, discounted to present worth, as it might inure respectively to the spouse and next of kin under the Wrongful Death Act and to the estate under the Survival Statute. But we do not feel warranted in holding that double recovery inheres in the verdict when in the aggregate it stayed within an amount which the evidence supported as derived from projected annual net income for decedent's work life expectancy, discounted to present worth.

We accordingly reverse with directions that the verdict of the jury as rendered and entered by the Clerk be reinstated.[4]

It is so ordered.

4. According to the docket entries in the District Court appellant would more accurately be described as "Administrator d. b. n. of the Estate of Charles E. Runyon, deceased."