Barbara M. HUGHES, Administratrix of the Estate of Gregory Coleman, Appellant,

v.

Charles L. PENDER et al., Appellees.

No. 12228.

District of Columbia Court of Appeals.

Argued May 11, 1978.

Decided Aug. 23, 1978.

Leonard J. Koenick, Washington, D. C., with whom Philip J. Hirschkop, Alexandria, Va., was on the brief, for appellant.

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellees.

Before KELLY, KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

On the afternoon of August 11, 1972, 16-year-old Gregory Coleman was shot to death by Officer Charles L. Pender of the Metropolitan Police Department. At the time, the deceased was riding away on a bicycle that had been "planted" by Metropolitan Police officers in an effort to apprehend bicycles thieves. Appellant, the decedent's mother, filed suit under both the District of Columbia Wrongful Death Act, D.C.Code 1973, § 16–2701 et seq., and the Survival Statute, D.C.Code 1973, § 12–101. Appellant waived damages under the Wrongful Death Act, except for funeral expenses, which were stipulated. Prior to submitting the case to the jury, the court directed verdicts on the issue of liability against the officer, and against the District of Columbia under the doctrine of respondeat superior.[1] The only matter left for the jury to determine was the amount of damages to be awarded appellant. The jury returned a verdict of $5,200. Appellant filed a motion for a new trial on the ground that the verdict was inadequate. This motion was denied without opinion. On appeal, appellant claims that the jury's award was insufficient as a matter of law and that the trial court erred in excluding certain evidence concerning the present net worth of her son's projected lifetime earnings. We affirm.

In order to put the issues before us in perspective, we reiterate that the sole issue before the jury was the amount of damages due to appellant under the District of Columbia Survival Statute, D.C.Code 1973, § 12–101 which provides for the action to be brought by the legal representative of the deceased. In a case such as this, damages are limited to compensation to the estate itself for the loss of prospective economic benefit in the form of the decedent's prospective net lifetime earnings discounted to present worth. *Runyon v. District of Columbia*, 150 U.S.App.D.C. 228, 463 F.2d 1319 (1972); *Hudson v. Lazarus*, 95 U.S. App.D.C. 16, 217 F.2d 344 (1954).[2]

At trial, appellant testified in detail about herself and her son Gregory. She was an Accounts Receivable Supervisor at a local department store, had graduated from high school, and had attended business college. The decedent was the youngest of her three sons. Appellant described him as a very dependable member of the family, who had a natural ability to work with his hands. He had been a cub scout for two or three years and liked to make jewelry. At the time of his death, he was employed part-time as a "jumper" for the Washington Star.

The evidence concerning the decedent was not, however, entirely positive. At school, he had experienced difficulties in reading and arithmetic. On several occa-

---

1. Appellant had also sought damages against the Metropolitan Police Chief, the Mayor of the District of Columbia, and the District of Columbia on the theory that Officer Pender had been negligently trained and supervised, and that this negligence had proximately caused the decedent's death. The Mayor was dismissed from the case at a pretrial conference. At the close of the trial, the court directed verdicts in favor of the Metropolitan Police Chief and the District on appellant's "negligent training" claim.

2. The Survival Statute does not purport to compensate individual members of the decedent's family for the loss of the economic benefit which they might reasonably have expected to receive from the decedent in the form of support, services or contributions during the remainder of his lifetime. Nor does it seek to compensate family members for the lost incidents of family association or the grief they have suffered. *Runyon v. District of Columbia, supra*, 150 U.S.App.D.C. at 231, 463 F.2d at 1322. *See also* the Wrongful Death Act, *supra*.

sions, he had run afoul of the law. The most serious incident occurred about a year before his death, when school officials discovered heroin in his possession. Following his arrest and conviction for possession of narcotics, he was placed on probation. An autopsy performed on the decedent showed no evidence, however, of narcotic involvement at the time of his death.

In order to provide the jury with an estimate of the future earnings which the decedent would have enjoyed had he not been killed, appellant called Mr. David Farber, an economist, as a witness. The court found Farber qualified to render an opinion on the probable earning capacity of Gregory Coleman.

Farber made two separate projections of the amount lost to the estate of Gregory Coleman. For both projections, the economist assumed that the decedent would enter the job market at age 18 and remain in the labor force until age 65. He assumed that productivity and inflation would increase over the years at a rate of approximately 5%. The economist reduced the gross estimates of the decedent's earnings by 26% for personal consumption, then discounted that figure by 6% to arrive at the present worth of the future earnings. An additional 15% was subtracted to account for the taxes the decedent would have paid, thus leaving a figure representing the present net worth of his projected lifetime earnings.

The first estimate was based solely on the socioeconomic status of the family in which the decedent was reared. That estimate took the form of a composite figure reflective of the future earnings of persons in eight selected occupational categories. The figure was weighted to reflect the percentage likelihood that decedent, as the son of a retail sales clerk, would enter each of the selected fields. This gave a base salary from which the probable net future earnings of the decedent could be ascertained. In making this estimate, the economist did not consider specific characteristics of the decedent, such as his reading or math levels, school grades, or arrest record. Using this technique, the economist calculated the present net worth of the decedent's lifetime earnings to be $349,000.

The economist's second estimate was based on the assumption that the decedent would have been employed as a general unskilled laborer. The economist testified that this classification included such work as loading trucks on a construction job, shoveling, and loading packages from a department store for delivery to customers. Under the assumption that the decedent would be an "average laborer," the economist estimated the present net worth of his lifetime earnings to be $235,000.

The court, on the appellees' motion, ruled that the economist's first estimate was inadmissible, and instructed the jury to disregard it. Appellees presented no evidence on the issue of future earnings, either by way of exhibits or testimony.

I

We consider first appellant's claim that the trial court erred in ruling inadmissible the economist's first projection of net future earnings, which relied on composite base salary figures.

The decision to admit expert testimony lies within the sound discretion of the trial court, whose ruling will be sustained unless a clear abuse of discretion is shown. *Ohio Valley Construction Co., Inc. v. Dew*, D.C.App., 354 A.2d 518, 522 (1976); *Harvey's Inc. v. A. C. Electric Co.*, D.C.App., 207 A.2d 660, 661 (1965). To warrant the use of expert testimony, the subject dealt with must be so related to some science, profession, business or occupation as to be beyond the ken of the average layman, and the expert witness must have knowledge of the subject area sufficient to aid the trier of fact in its search for the truth. *Waggaman v. Forstmann*, D.C.App., 217 A.2d 310, 311 (1966).

We think the task of projecting a person's lost earnings lends itself to clarification by expert testimony because it involves the use of statistical techniques and requires a broad knowledge of economics. *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d

705 (5th Cir. 1967); *Krohmer v. Dahl*, 145 Mont. 491, 402 P.2d 979 (1965). When properly utilized, such expert testimony can provide a rational basis for the jury's determination of an individual's future earnings, and can thus minimize the risk of jury speculation present whenever future earnings must be predicted. *See* 3 F. Harper & F. James, The Law of Torts § 25.8 at 1317 (1956). *See also Phillips v. Ward*, 415 F.Supp. 976, 981 (E.D.Pa.1975).

■ In a case such as this, involving a person who had not yet made his choice of livelihood, future lost earnings must be determined on the basis of potential rather than demonstrated earning capacity. That potential must be extrapolated from individual characteristics, such as age, sex, socio-economic status, educational attainment, intelligence and dexterity. *See* O'Connor & Miller, *The Economist-Statistician: A Source of Expert Guidance In Determining Damages*, 48 Notre Dame Lawyer 354, 359 (1972). In this case, the trial court ruled inadmissible an economist's projection which was based solely on the socio-economic status of decedent's family. In making this projection, the economist had failed to consider factors such as the decedent's school grades, intelligence level, or arrest record. The trial court excluded this testimony because the weights assigned to the various occupational categories did not reflect accurately the probability that this individual decedent would have actually entered one of those occupations. The evidence indicated, for example, that the likelihood that the decedent would become a craftsman far exceeded the possibility that he would enter other professions which were assigned greater weights in the composite. We hold that the trial court did not abuse its discretion in excluding this evidence.

## II

We turn now to the appellant's contention that the trial court erred in denying her motion for a new trial, advanced on the ground that the jury's verdict was grossly inadequate. This asserted inadequacy is based on the disparity between the $235,000 which the economist projected as decedent's possible future earnings, and the $5,200 which the jury awarded.

■ It is well settled that when a jury finds a particular quantum of damages, and the trial court refuses to disturb the jury's findings on a motion for a new trial, an appellate court will order a new trial only when the award is so inadequate as to indicate prejudice, passion or partiality on the part of the jury, or where it must have been based on oversight, mistake or consideration of an improper element. *Cunningham v. Conner*, D.C.App., 309 A.2d 500 (1973); *Ryen v. Owens*, 144 U.S.App.D.C. 332, 446 F.2d 1333 (1971). In *Taylor v. Washington Terminal Company*, 133 U.S. App.D.C. 110, 409 F.2d 145, *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969), the Circuit observed that:

> Two factors unite to favor very restricted review of such orders. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second factor is the deference properly given to the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages. This second factor is further weighted by the constitutional allocation to the jury of questions of fact.
>
> Where the jury finds a particular quantum of damages and the trial judge refuses to disturb its findings on the motion for a new trial, the two factors press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders . . . a new trial. [*Id.* at 113, 409 F.2d at 148 (footnotes omitted).]

■ In the instant case, the jury was assigned the difficult task of determining the net future earnings of a 16-year-old boy who had not yet chosen a profession. The economist who testified on appellant's behalf estimated the present value of net lifetime earnings to be $235,000. Expert testimony is, however, like any other evi-

dence, not binding upon the trier of fact. *Mims v. United States*, 375 F.2d 135, 140 (5th Cir. 1967). The jury is entitled to exercise considerable judgment in determining the weight to be given to such evidence. *Novak v. Gramm*, 469 F.2d 430 (8th Cir. 1972); *Main Bank & Trust v. York*, 498 S.W.2d 953 (Tex.Civ.App.1973). In this case, the economist's estimate was based on a number of assumptions, such as the decedent's life expectancy, the number of years he would have been employed, and the dollar value of his personal consumption. It is the function of the jury to determine the amount of damages to which plaintiff is entitled and the jury was free to reject any of the foregoing assumptions. On the basis of record evidence, the jury could have concluded that the decedent's employment prognosis was not promising. We conclude that although insubstantial, the verdict was not so grossly inadequate as to compel reversal of the trial court's denial of appellant's motion for a new trial. Accordingly, the judgment below is

*Affirmed.*