James D. NELSON, Jr., as Son of James D. Nelson, Sr., and as Personal Representative of the Estate of James D. Nelson, Sr., Deceased, Plaintiff,

v.

AMERICAN NATIONAL RED CROSS, et al., Defendants.

Civ. A. No. 92–868 (TPJ).

United States District Court, District of Columbia.

March 12, 1993.

Patrick M. Regan, Cecilia C. Fex, Koonz, McKenney, Johnson and Regan, Washington, DC, for plaintiff.

Bruce M. Chadwick, Fern P. O'Brien, David A. Wollin, Arnold & Porter, and Nancy F. Preiss, Williams & Connolly, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

On February 8, 1985, James Nelson, Sr., a 58–year old florist, underwent an elective splenectomy at Georgetown University Hospital ("Georgetown") in Washington, D.C. to correct a bleeding disorder of the skin and mucous membranes. When he hemorrhaged postoperatively, his blood loss was replaced with multiple units of blood and blood products obtained by the hospital from the blood bank operated by the District of Columbia chapter of the American National Red Cross. One of the units was later learned to have been contaminated with the human immunodeficiency virus ("HIV").

On March 15, 1991, Nelson died of acquired immunodeficiency syndrome ("AIDS") at John Hopkins Hospital, Baltimore, Maryland, the disease having been derived from the transfusion he had received at Georgetown six years earlier.

On March 9, 1992, Nelson's son, as personal representative of his father's estate, brought the instant action against the American National Red Cross, its local affiliate, and Georgetown University Hospital, as the suppliers of the tainted blood, under the District of Columbia's Wrongful Death Act and its Survival Statute, to recover damages resulting from the events culminating in his father's death.

Plaintiff contends that, although the ELISA test to detect directly the presence of HIV antibodies in blood did not become available until March, 1985, both the risk of contracting AIDS through blood transfusions, and simple if less efficacious modalities of blood-donor screening and alternative treatments for Nelson's condition, had been well known to the American Red Cross and Georgetown for several years prior to February, 1985, and that each in its own way had therefore been negligent in failing to employ them to avert that risk in Nelson's case.

The defendants have moved to dismiss the complaint or for summary judgment, on limitations grounds. They assert that any action to recover for their alleged negligence expired, at the latest, in October, 1989, three years after Nelson learned that he had been "injured" (i.e., infected), even giving plaintiff the benefit of the so-called "discovery rule." Plaintiff responds that, if it is "injury" to a victim that starts the statute running, then Nelson's injury did not occur until AIDS overtook him in 1990. Moreover, even if Nelson is deemed to have been actionably "injured" when he received the tainted blood, and the statute commenced to run when he learned of it some months later, Nelson did not have—and may never have had—the knowledge essential to put him on notice that his time within which to make a claim for it was limited, namely, as the D.C. Court of Appeals has put it in one case, "some evidence of wrongdoing" on the part of the prospective defendants. *Bussineau v. President & Directors of Georgetown College,* 518 A.2d 423, 435 (D.C.1986).

### I.

The record before the Court establishes that, in early fall of 1986, some 19 months after Nelson's operation, the local chapter of the Red Cross informed Nelson's physician at Georgetown that the donor of one of the units of blood with which Nelson had been transfused in February, 1985, had subsequently tested positive for the HIV antibody. The physician in turn notified Nelson, who met in person with the doctor on October 3rd, was tested himself, and told on October 10th that he, too, had tested HIV positive.

The physician informed Nelson of the implications of the situation: that, although he was asymptomatic at the time, he would in all likelihood develop AIDS, only the duration of the meantime being uncertain. He was told that when he did develop AIDS his immune system would be severely compromised, rendering him susceptible to infections and cancers. According to the physician Nelson fully understood, and discussed the fact with the doctor, that the only possible source of his infection was the blood transfusion; he had not otherwise been exposed. Nelson was described as being distraught and angry. He mentioned consulting counsel. And he demonstrated, so the physician said, a relatively sophisticated layman's comprehension of AIDS and of what the mishap portended for his future.

Nelson was not expressly told, to be sure, that anyone had been at fault; but then neither was he encouraged to believe that what had happened was unpreventable: an Act of God; an "accident;" or mere misfortune.

In April, 1987, Nelson began to exhibit the first symptoms of AIDS-related complex—enlarged lymph nodes, and a T–4 cell count decline—which the doctor explained to him as being the beginning of the progression of his infection to AIDS. By the spring of 1990 Nelson had developed AIDS, and many of its related debilities, and he died, aged 64, of an AIDS encephalopathy on March 15, 1991. (Deposition of Ronald A. Sacher, M.D. of October 29, 1992, and exhibits to the Memoranda of Law).

## II.

■ The District of Columbia Survival Statute, D.C.Code § 16–2701 (1981) saves an extant right of action "in whose favor it has accrued for any cause" for posthumous enforcement by a decedent's estate. If the "cause" is a personal injury done to the decedent while he was alive, the "right of action" is governed for limitations purposes by D.C.Code § 12–301(8) (1981), which provides that such actions "may not be brought after the expiration of [three years] from the time the right to maintain the action accrues." *Estate of Chappelle v. Sanders*, 442

A.2d 157, 158 (D.C.1982). Under controlling District of Columbia precedents the right to maintain an action for injury to the person "accrues" when "injury result[s]" from a prospective defendant's wrongful conduct. *See Hanna v. Fletcher*, 231 F.2d 469, 472 (D.C.Cir.), *cert. denied*, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956). But when "the fact of injury [is] not readily apparent and ... might not become apparent for several years after the incident causing injury ha[s] occurred," *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C.1984), the District of Columbia courts follow the "discovery rule" by which the limitations period will not commence to run until the injury ought to be apparent, or "when the plaintiff knows or through the exercise of due diligence should have known of the injury." *Burns v. Bell*, 409 A.2d 614, 617 (D.C.1979).

Defendants concede that the elder Nelson, plaintiff's decedent, did not "know" of the contaminated transfusion immediately—indeed, neither did they—but they assert that in October, 1986, he learned all he needed to know about it in order to start the statutory period running. Yet he refrained for undisclosed reasons from commencing an action to recover for it even through the torment of his terminal illness and death more than four years later. Thus, they contend, his right to maintain such an action had expired before he died, and did not revive upon his death to be enforced by his personal representative.

This Court concludes, as defendants contend, that the cause of action which plaintiff seeks to pursue here under the District of Columbia's Survival Statute is time-barred. Nelson was "injured," for limitations purposes, when he received the pathogenic transfusion, as surely so as if he had been administered a poison or struck a blow. He "discovered," as did the defendants, that he had been infected in October of 1986. He also knew how, when and by whom the infecting agent had been procured and introduced into his body. And he knew that the consequences were likely to be lethal. A tragedy had befallen him for which he was himself entirely innocent. "Wrongdoing" by someone was more than a hypothetical possibility.

All of this Nelson knew, without doubt, more than four years in advance of his death, during which he alone experienced the pain, the anxiety, the progressive disability, and the expense, which should have served as constant reminders to him that if the law afforded any remedy, he would have to sue for it. Yet for reasons of his own, perhaps never to be known, Nelson elected to allow his right to sue expire by the elapse of time.

One injured by the wrongful conduct of another need not—indeed, must not when time grows short—await the onset of all the adverse consequences of that injury before going to court. Future harms, including a virtually inevitable death, are nonetheless as fully compensable as money can compensate, upon proper proof at trial, even though they have yet to occur. *See Knight v. Furlow,* 553 A.2d 1232 (D.C.1989); *see also Baker v. A.H. Robins Co., Inc.,* 613 F.Supp. 994, 996–97 (D.D.C.1985). The statute of limitations at least admonishes, elastic though it may have become, that a victim must come forward with his claim with reasonable alacrity, confront the wrongdoer, and tender his proof while evidence is sufficiently fresh to be effectively marshalled and tested by the judicial process. *See Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1202 (D.C.1984); *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979).

The legislature has made a policy decision to fix by statute as reasonable that interval which may pass between injury and action at three years, upon which the courts have engrafted the ameliorative "discovery rule." When, however, the quality of a plaintiff's diligence is dismissed as just another issue of fact to be put to the trial jury, as some courts have done,[1] the discovery rule has effectively retired the statute.

Evidence of unreasonable delay on the part of a plaintiff in bringing suit—particularly in death cases—may be more difficult for a defendant to come by than other favorable evidence. When it is available it is perforce inconsistent with any defense on the merits; the stronger the merits defense, the more likely it is to belie the notion that the defendant has been prejudiced by delay. Moreover, the issue of a plaintiff's diligence becomes a collateral one, and often a distracting irritant to the jury. Many defendants resign to abandon genuine limitations defenses altogether as trial issues, for reasons of tactics rather than insubstantiality. And, in any event, the defendant is not saved the ordeal of the trial itself that the statute of limitations was intended and expected to preclude.

### III.

■ The plaintiff's wrongful death claim here, however, is not so manifestly untimely. The District of Columbia Wrongful Death Act, D.C.Code § 16–2701 (1981) provides that a death caused by the "wrongful act" of another gives rise to an action for damages for the benefit of the decedent's surviving dependent next-of-kin if the "wrongful act" is such as would have entitled the decedent to have maintained such an action had his death not ensued. The applicable period of limitations is "one year after the death of the person injured." D.C.Code § 16–2702 (1981). This action was filed within the year following Nelson's death, but defendants contend that because Nelson himself was time-barred at his death, so too is plaintiff as his personal representative; in other words, because Nelson was not "entitled" to maintain the action when "death ensued," neither is his personal representative whose rights, they say, are derivative of, and no larger than, his decedent's.

Plaintiff correctly observes, however, that the Wrongful Death Act was enacted by the legislature to protect interests of persons other than the victim in his own vitality, specifically, the interests of his spouse and next-of-kin who have also, by reason of his death, sustained a loss the law regards as compensable. The cause of action it creates is not derivative but, rather, a new and independent cause of action which is not constrained by any temporal limits on the enforceability by the decedent himself of his

---

1. E.g., *John Doe v. American National Red Cross,* Civ. No. 92–645 (CRR) mem. op., 1993 WL 25523 (D.D.C. January 28, 1993).

own rights respecting the same injury at the time of his death.

There is, it appears, no controlling decision of the District of Columbia Court of Appeals on the issue, and both plaintiff and defendants cite a multitude of cases from other jurisdictions in support of the construction they say this Court must give to the District of Columbia's version of the Wrongful Death Act. Older cases from the U.S. Court of Appeals for the District of Columbia Circuit, however, suggest that the construction favored by the plaintiff is the appropriate construction, *see Semler v. Psychiatric Institute of Washington, D.C.,* 575 F.2d 922, 924–25 (D.C.Cir.1978); *Runyon v. District of Columbia,* 463 F.2d 1319, 1321 (D.C.Cir.1972), and is apparently in accord with the majority rule throughout the country of those courts having construed similar versions of Lord Campbell's Act. *See* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 127, at 957 (5th ed. 1984); Restatement (Second) of Torts § 899 cmt.c (1979).[2]

Such a conclusion does not alleviate a legitimate concern for the judicial system's ability to resolve death claims which are stale in fact while nevertheless viable under the statute of limitations. A timely action for wrongful death might theoretically be predicated upon a defendant's conduct ancient in the extreme if only the suit follows death within the ensuing year. It is, however, the legislature's exclusive prerogative to provide the prophylaxis of a statute of absolute repose, as it has done in other cases, *see, e.g.,* D.C.Code § 12–310 (1981), if that is to be the policy of the forum. This federal court certainly may not do so.

For the foregoing reasons, it is, therefore, this 11th day of March, 1993,

ORDERED, that defendants' motion to dismiss the complaint or for summary judgment is granted in part and denied in part; and it is

FURTHER ORDERED, that Counts II, IV and VI of plaintiff's amended complaint are dismissed with prejudice.

---

**2.** That conclusion is not diminished by *Greater Southeast Community Hospital v. Williams,* 482 A.2d 394 (D.C.1984), which concerns only the *sui juris* status of the decedent—a stillborn fetus allegedly fatally injured by the defendant's negligence while in the womb—and not the statute of limitations.